### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **MORRIS WAYNE SIMON, #01825828** § | |
| § | |
| **Petitioner,** § | |
| § | |
| v. § | **CIVIL CASE NO. 3:17-CV-327-M-BK** |
| § | |
| **LORIE DAVIS, Director, TDCJ-CID,** § | |
| § | |
| **Respondent.** § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the 28 U.S.C. § 2254 petition for writ of habeas corpus filed in this case was referred to the United States magistrate judge for findings, conclusions, and recommendation. Upon review of the relevant pleadings and applicable law, the habeas corpus petition should be **DENIED**.

**I.   BACKGROUND**

A jury convicted Simon of capital murder, and he was sentenced to life imprisonment without the possibility of parole. *State v. Simon*, No. F08-54622, Doc. 14-11 at 59 (204th Jud. Dist. Ct., Dallas Cty., Tex., Nov. 2, 2012), *aff'd*, No. 05-12-01539-CR, 2014 WL 3700667, at *1 (Tex. App.—Dallas, Jul. 24, 2014, pet. ref'd). Subsequently, the Court of Criminal Appeals denied state habeas relief without issuing a written order. *Ex parte Simon*, No. WR71-753-02, Doc. 14-10 at 1 (Tex. Crim. App. Nov. 2, 2016).[1]

---

[1] The state habeas court record is available at Doc. 14-11, the clerk's record (C.R.) is available at Doc. 13-5, and the reporter's record (R.R.) is available at Doc. 13-14 through Doc. 13-20, and Doc. 14-1 through Doc. 14-9.

On February 3, 2107, Simon filed the *pro se* federal habeas petition in this case, in which he asserts ineffective assistance of trial counsel, trial court errors, and prosecutorial misconduct. Doc. 3 at 6-9; Doc. 4. The Court later granted him leave to supplement the petition to allege ineffective assistance of counsel on appeal. Doc. 12; Doc. 19. Respondent argues that Simon's claims lack merit. Doc. 15. Simon has filed a two-part reply largely reiterating his original arguments but conceding that his sixth ground for relief lacks merit. Doc. 20; Doc. 21.

Simon subsequently moved to submit additional documents: (1) the State's motions in limine and the State's trial brief addressing the diminished capacity doctrine, which were already part of the trial record; (2) a list of potential trial witnesses submitted on Simon's behalf to defense counsel that was not previously provided to the state habeas court; and (3) the report of a psychological evaluation of Simon conducted by Dr. Jack Randall Price – who testified at the pre-trial suppression hearing – and documents referred to in the evaluation report. Doc. 22. Respondent objects to the request to include the list of potential trial witnesses because the state habeas court did not have a chance to review it. Doc. 23 at 1-2. Contemporaneously with this recommendation, Simon's motion to supplement the record with the list of witnesses is denied, but the motion is granted in all other respects.

## II. STANDARD OF REVIEW

Simon is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simon bears the burden of establishing that he is entitled to relief.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt."  *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted).  Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'"  *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102).

Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted.  *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable."  *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal law is different from an *incorrect* application of federal law") (quotations and quoted case omitted; emphasis in original).  The deferential standard of review applies even where the state court, as in this case, summarily denied all claims without written order.  *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

Moreover, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under

Page 3 of 17

*Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both prongs if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### III. ANALYSIS

#### A. Court's Failure to Grant and Counsel's Failure to Request a Mistrial – Claim 1

Simon asserts that after State's witness Justin Smith ('Smith") referred to him by the nickname "Gotti," in violation of a pretrial order, defense counsel erred in failing to request a mistrial and the trial court erred in failing to grant one. Doc. 3 at 6; Doc. 4 at 1-2.

The record reveals that Smith mentioned Simon's nickname three times in violation of the order granting the defense's motion in limine. Defense counsel promptly objected after the

first and third occurrences—including requesting instructions to disregard and moving for a mistrial—but did not object after the second incidence. *Simon*, 2014 WL 3700667, at *9-11; Doc. 14-3 at 177-181, 191, 193-94, 205 (R.R. 10). On direct review, the state court of appeals concluded:

> The prosecutor in this case admitted she was aware of the trial court's prior ruling that, before there could be any use of appellant's nickname in front of the jury, the State had to approach the court, but she said that she did not intentionally elicit appellant's nickname through her questioning of Smith. There has been no showing that the prosecutor intentionally violated the court's order. Indeed, none of her questions to Smith that preceded his use of the nickname "Gotti" showed a calculation to inflame the mind of the jury or provoke the defense. As the trial court commented, it appeared Smith simply "blurted out" the initial reference to "Gotti." Smith's other two uses of the nickname occurred after he had been admonished by the trial court, and they showed nothing more than Smith's difficulty in following the court's instructions—not some deliberate or reckless provocation of the defense by the State. When Smith continued to refer to appellant as "Gotti" after being specifically ordered not to do so by the court, the court excused the jury and warned Smith he could lose the chance to limit his punishment to twenty years in prison if he did not follow the court's instructions and stop referring to appellant as "Gotti." After the trial court admonished appellant in this fashion, he did not again refer to appellant by that nickname. On the facts of this case, we conclude the trial court did not abuse its discretion by denying appellant's motion for mistrial, and that Smith's use of the nickname "Gotti" to refer to appellant was not so inflammatory that its potential for prejudice would not be cured by an instruction to disregard. Additionally, the record reflects that the trial court's response to Smith's use of the nickname "Gotti" was adequate to cure any potential for prejudice. We therefore overrule appellant's third and fourth issues.

*Simon*, 2014 WL 3700667, at *12.

Simon argues that "Gotti" is "associated with a vicious man and crime lord" and, thus, that the use of the name "inflamed the jury" and "rendered the trial so unfair as to undermine a fair and effective trial." Doc. 4 at 2. His claim is unavailing. First, apart from his conclusory assertions, there is no indication in the record that the jury made the association Simon presupposes. As noted by the state court of appeals, "Gotti" was mentioned only three times,

and two of those occurrences were promptly followed by the court's unequivocal instruction to disregard. *See United States v. Cessa*, 785 F.3d 165, 183 (5th Cir. 2015) ("any prejudicial remarks may be rendered harmless by curative instructions to the jury and juries are presumed to follow their instructions") (internal citations and quotation marks omitted). As such, Simon—offering only his subjective opinion and conjecture—cannot show a "substantial and injurious influence or effect" on the jury verdict stemming from the denial of the defense's motion for mistrial. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (holding a constitutional error is cause for federal habeas relief only if it has a "substantial and injurious effect or influence in determining the jury's verdict").

Moreover, Simon cannot show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. 668, 687. Contrary to his assertions, *see* Doc. 4 at 1-2; Doc. 20 at 5, defense counsel objected to the first mention of the nickname and subsequently moved for a mistrial during the hearing outside of the presence of the jury. Doc. 14-3 at 177-181. While counsel did not object to the second occurrence, Doc. 21 at 3, Simon's bare assertion is plainly insufficient to show he was prejudiced, given the trial court's prompt instructions to disregard following the first and third mentions of the nickname. *See Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008) ("a conclusory assertion is insufficient to show prejudice under . . . *Strickland*").

The state court's implicit denial of these grounds was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, Simon's first claim fails.

### B. Counsel's Failure to Request a Probation Violation Hearing – Claim 2

Next, Simon alleges that his counsel rendered ineffective assistance by failing to request a bail hearing on an unrelated probation violation contemporaneously with the trial court's grant of a personal recognizance ("PR") bond on the capital murder charge. Doc. 3 at 6; Doc. 4 at 2-3. Simon avers that (1) if defense counsel, who represented him on both the capital murder and probation violation cases, had requested such a hearing, the court would have released him on a PR bond in both cases, and (3) because counsel failed to do so, Simon's was confined for over four years awaiting the capital murder trial. Doc. 4 at 3; Doc. 20 at 5; Doc. 21 at 4. Simon's claim wholly lacks foundation.

In April 2008, Simon was arrested for capital murder and his bond was set at $1,000,000. Doc. 13-5 at 9 (C.R.). Because Simon was already on deferred adjudication probation for the offense of burglary of a habitation, the State moved to adjudicate his guilt, a warrant was issued, and bond was set at $100,000 in that case. Doc. 13-5 at 116. In June 2008, despite Simon's indigent status, the trial court denied his request to reduce bail on the capital murder charge to $550,000, noting that the offense was committed while Simon was on probation and that he had previously been incarcerated for other probation violations. Doc. 13-5 at 116; Doc. 13-15 at 35 (R.R. 2). More than four years later, on August 28, 2012, the court granted Simon a PR bond in the capital murder case, citing repeated delays in trying the case. Doc. 13-20 at 47 (R.R. 7). Although the court declined to release Simon in the probation violation case, it noted that he could request to set the probation violation case for a hearing. *Id.*

Simon fails to allege, much less show, how counsel's failure to request a hearing in the probation violation before the trial of his capital murder case amounted to deficient performance.

Simon was granted a PR bond in the capital murder case on August 28, 2012, two months before his October 30, 2012 trial.  Doc. 13-20 at 47 (R.R. 7).  Contrary to his assertions, after he was granted a PR bond in the capital murder case, Simon was incarcerated for approximately two months before the start of his trial, rather than four years.  Moreover, an exchange during the October 12, 2012 pretrial hearing on the capital murder case suggests that defense counsel's decision not to ask for hearing on the probation violation, which, if thereafter was not timely held, would trigger Simon's right to a PR bond on the probation violation, was simply a matter of strategy:

> THE DEFENDANT [SIMON]:  I'm -- I'm -- I ain't questioning your authority or nothing, I'm just asking why wasn't I granted a PR bond or some type of bond along with the PR bond that was done for the capital murder charge?
>
> THE COURT: I don't remember. I would have to do the research.
>
> MS. BERNHARD [THE PROSECUTOR]: He would be talking about the probation violation and that's because we were not set for a hearing on the probation violation.
>
> THE COURT: Did I give him a PR bond on the capital murder?
>
> MS. BERNHARD: Yes.
>
> THE COURT: Okay. Yeah. That's why.
>
> MS. BERNHARD: Now, we can ask that a hearing be set on the probation violation, but we've talked about that.
>
> THE COURT: Right. You have a right to have a hearing on your probation violation within 20 days if they're not –
>
> MS. BERNHARD: Of requesting.
>
> THE COURT: Of requesting. Right. And within 20 days of you requesting it. And then if they're not ready to proceed on the probation violation, then -- then I would have to grant you a PR bond. The mo-  -- the probation violation would

> still be there, the allegation, but -- but apparently you and your lawyer already discussed this. And for whatever reason she did not request a hearing.

Doc. 14-1 at 5. Moreover, his contention that upon his request for a probation violation hearing, no hearing would have been held, thereby prompting the court to release him on a PR bond, Doc. 21 at 4, is mere conjecture.

At bottom, Simon fails to demonstrate that he was prejudiced. Particularly, he makes no showing whatsoever that the failure to secure a PR bond impacted the outcome of his capital murder trial—the subject of the instant petition. Because Simon plainly fails to show that the state court's determination impliedly rejecting this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, his claim fails.

### C. Error in Granting the State's Motion in Limine – Claim 3

Simon contends that the trial court erred in granting the State's motion in limine prohibiting the defense from mentioning his mental-health problems. Doc. 3 at 7. Although there is discussion on the record during the trial that the State filed such a motion, neither party indicates where in the record it is reflected that such a motion was ever ruled on. In any event, contrary to Simmon's argument, the trial court's grant of the State's motion in limine did not preclude the presentation of evidence regarding Simon's mental health, but simply prohibited its introduction or mention in the jury's presence before first consulting the court. The trial judge well explained the scope of a limine order following her grant of the defense's motion in limine to exclude any reference to Simon by his nickname: "Well, I'm not saying it's not coming in. I'm saying that if she [the prosecutor] thinks it is important, that she needs to approach the Court first. . . and then we can decide." Doc. 14-2 at 189. Thus, assuming the trial court did grant the

State's motion in limine as to his mental health condition, Simon cannot demonstrate any resulting error nor prejudice. Doc. 14-2 at 186-87.

Seemingly conflating issues, Simon also avers he suffers from mental illness and that the trial court's finding that "he was 'mentally retarded and had mental issues' should have been enough to trigger the court's duty to order a competency hearing." Doc. 4 at 3-4; Doc. 20 at 5; Doc. 21 at 4-5; Doc. 24 at 1-6. To the extent he claims the trial court erred in not ordering a competency examination, those claims are unavailing.

Mental health problems and competency are not mutually exclusive. Simon's own psychologist, in response to the court's inquiry about "retardation, competency," testified:

> Well, the cutoff for a diagnosis of mental retardation is an IQ at 70 or below, with problems in adaptive behaviors. So in other words, a person could have an IQ in the 60s but be very street smart and -- or have a lot of support and have a job that they were trained for, and they would not have those kinds of deficits. Likewise, a person could have a higher IQ. But the diagnosis of mental retardation is not, per se, the issue in competency to stand trial. It could be an underlying factor, but then you look at, do they have an understanding, a factual and a rational understanding of the charges against them, and can they cooperate with their attorney. So that some people with IQs in the 60s can be competent, and some can be incompetent.

Doc. 13-18 at 53-54. Simon points to nothing in the record demonstrating that he lacked the mental capacity to understand the proceeding and was not capable of assisting his counsel. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993). Moreover, defense counsel conceded during the same hearing that she was not raising the issue of Simon's competency to stand trial, Doc. 13-18 at 54—a strategy the Court has no basis to question on the record before it.

Finally, Simon suggests that he intended to pursue an insanity or diminished capacity defense. Doc. 21 at 5 (insanity);Doc. 4 at 4 (diminished capacity); Doc. 24 at 5 (not culpable). However, with absolutely no evidence of record to support such contentions, any claims he

intends to assert based on them necessarily fail. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (cited cases omitted) (without evidence in the record, "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"). Moreover, any suggestion that his mental health condition/history would have been relevant to punishment is a non-starter. Upon his conviction of capital murder, for which the State did not seek the death penalty, Simon received a statutorily mandated sentence of life without parole. *See* TEX. PENAL CODE ANN. § 12.31(a) (West). Thus, there was no penalty phase of his trial.

Because Simon has not demonstrated that the state court's implicit decision rejecting this claim was contrary to or an unreasonable application of clearly established federal law, the claim also fails before this tribunal.

### D. Ineffective Assistance of Counsel on Appeal– Claim 8

In a related claim raised in his supplemental petition, Simon asserts his appellate counsel rendered ineffective assistance in failing to challenge the trial court's order granting the state's motion in limine, which prohibited defense counsel from inquiring into Simon's mental health without first obtaining a ruling on its admissibility from the court (*see supra*). Doc. 12 at 1-2; Doc. 21 at 7-8. He argues that if trial counsel had been permitted "to raise the issue of mental incompetence there is more than a mere probability that applicant would have been found not guilty by reason of insanity." Doc. 12 at 1. He avers that he was "not mentally capable of understanding and participating in any proceeding that involve[d] complex legal strategy," and that appellate counsel failed to consult with him about his appeal. Doc. 12 at 1-2; Doc. 21 at 8.

Simon has failed to show that appellate counsel's performance was deficient and that he was prejudiced as a result. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (applying *Strickland* standard in evaluating the ineffective assistance of appellate counsel). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Jones*, 463 U.S. at 751-752). It is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *Jones*, 463 U.S. at 752; *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003) (counsel is obligated only to raise and brief those issues that are believed to have the best chance of success).

As detailed in the preceding subsection, there is nothing in the record demonstrating that Simon lacked the mental capacity to understand the proceedings and was not capable of assisting his counsel. Consequently, Simon has not demonstrated that the issue that he contends appellate counsel should have raised was clearly stronger than the issues counsel did pursue on direct appeal. *See Smith*, 528 U.S. at 288 ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." (quoted case omitted)). Because Simon has not demonstrated that the state court's decision implicitly rejecting his claim of ineffective assistance of appellate counsel was in any way unreasonable or involved the contrary application of federal law, he cannot prevail.

### E.  Prosecutorial Misconduct – Claim 4

Simon asserts the State engaged in misconduct by impeaching three of its own witnesses, LaShell Simon, Justin Smith ("Smith"), and Kara Renee Turner-Pickens ("Turner-Pickens"),

simply to introduce inadmissible evidence. Doc. 3 at 7. Over defense counsel's objection, the trial judge permitted the State to impeach LaShell Simon with her prior inconsistent statement to the police and contemporaneously instructed the jury that the evidence was admissible only to prove her credibility. *Simon*, 2014 WL 3700667, at *3 & n.3. Simon posits no theory whatsoever as to how the prosecutor's impeachment of Smith and Turner-Pickens constituted misconduct, and the Court does not hazard to guess or presume one.

As a preliminary matter, there is no *per se* prohibition against impeaching one's own witness in the federal law; indeed, such impeachment is expressly permitted. *See* FED. R. EVID. 607. Because federal habeas relief is available only for the vindication of rights existing under federal law, *Manning v. Warden*, 786 F.2d 710, 711 (5th Cir. 1986), Simon's complaint that the State impeached its own witness necessarily fails. Even assuming the witness' prior inconsistent statement had no probative value and was unfair, highly prejudicial and duplicative, as Simon repeatedly asserts, Doc. 4 at 4; Doc. 20 at 5; Doc. 21 at 5-6, the court's contemporaneous limiting instruction—which, again, the jury is presumed to have followed—was sufficiently curative. Thus, Simon's bald contentions that his right to due process was violated lacks merit.

As demonstrated by the foregoing, Simon has not shown that the state court's implicit decision to deny his prosecutorial misconduct claim was contrary to, or involved an unreasonable application, of clearly established federal law. Accordingly, this ground for relief should be denied.

### F. Accomplice-Witness Jury instruction – Claim 6

Simon complains the trial court failed to include an accomplice-witness jury instruction as to Turner-Pickens, Doc. 3 at 8, who he avers (1) helped count the money after the murder, (2)

fled to avoid being prosecuted, and (3) used some of the robbery proceeds to pay her own probation fees. Doc. 4 at 5. Simon's claim is not cognizable in this federal habeas action.

There is no clearly established federal law requiring corroboration of accomplice testimony. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1062 (5th Cir. 1987) ("The state-law requirement that accomplice witness testimony be corroborated has no independent constitutional footing."). And, as stated previously, state law violations do not provide grounds for federal habeas relief. *See Manning*, 786 F.2d at 711. Simon cannot demonstrate that the state court's implicit decision rejecting this claim was contrary to or an unreasonable application of clearly established federal law. Therefore, this claim also fails.

### G. Ineffective Assistance of Counsel at Trial – Claim 7

Simon does not present any factual support for his claim that counsel was ineffective for "not seeking out a defense witness" or "any evidence that might be favorable to the defense." Doc. 3 at 9. He avers counsel called no witnesses at trial and presented no mitigating evidence, thereby constructively denying him a meaningful opportunity to present a complete defense, as mandated by the holding in *United States v. Cronic*, 466 U.S. 648 (1984). Doc. 4 at 5-6; Doc. 21 at 7. Simon's assertions are unavailing.

The instant case does not fall within that narrow spectrum of cases described in *Cronic*. *See Craker v. McCotter,* 805 F.2d 538, 542 (5th Cir. 1986) ("constructive denial of counsel occurs ... in 'only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all'" (quoted case omitted)). The record clearly reflects Simon had "meaningful assistance" of counsel. *See Cronic,* 466 U.S. at 663–67 (listing relevant factors to evaluate a

lawyer's effectiveness). And Simon's conclusory assertions to the contrary wholly fail to show that defense counsel entirely failed to challenge the prosecution's case, not just individual elements of it. In short, Simon's failure to investigate claim is governed by *Strickland* and he plainly fails to meet that standard.

    Additionally, allegations of a counsel's failure to investigate must state with specificity what the investigation "would have revealed and how it would have altered the outcome of the trial." See *Lockett v. Anderson*, 230 F.3d 695, 713 (5th Cir. 2000). Here, Simon offers no facts regarding how counsel's investigation was deficient. See *Strickland*, 466 U.S. 668, 689 (to establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness"). Moreover, Simon's reply argument (Doc. 20 at 6) that he tried to give counsel "a list of witnesses that he wanted called," and that counsel refused to accept the list, is self-serving and wholly unsupported. See *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value."). Simon also does not show how further investigation would have helped his defense and, ultimately affected the outcome of his trial. He also does not explain what difference any additional witness would have made. Specifically, he fails to identify any such potential witness, or offer any evidence that the witness was available and willing to testify and that the witness' testimony would have been favorable to him. See *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("to demonstrate the requisite *Strickland* prejudice, [a habeas petitioner] must show not only that [the] testimony would have been favorable, but also that the witness[es] would have testified at trial" (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985))).

Because Simon has not demonstrated that the state court's implicit decision rejecting his ineffective-assistance claim was contrary to or an unreasonable application of clearly established federal law, this claim lacks merit.

### H. Evidentiary Hearing

Simon requests "a live evidentiary hearing to resolve the issue of his mental incompetence." Doc. 4 at 6. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition raises only claims that were adjudicated on the merits in state court. Simon cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Accordingly, he is not entitled to an evidentiary hearing.

### IV. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be **DENIED**.

**SO RECOMMENDED** July 27, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

*[signature]*
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE